## Nourse, et al. v. Andrews, Mayor of Russellville, et al.

(Decided October 16, 1923.)

### Appeal from Logan Circuit Court.

1. Waters and Water Courses—Diversion of Subterranean Streams Governed by Same Rules as Surface Streams—Subterranean streams as distinguished from subterranean percolations are governed by the same rules and give rise to the same rights and obligations as flowing surface streams, and the owner of the land under which a stream flows can therefore maintain an action for its diversion, if such diversion took place under circumstances which would have enabled him to recover if the stream had been above ground.

2. Waters and Water Courses—Course of Subterranean Streams Must be Known.—In order to bring subterranean streams within the rules governing surface streams their existence and their course must be to some extent known or notorious.

3. Waters and Water Courses—Percolating Waters Subject to Use by Owner of Land.—Percolating waters are parts of the earth itself as much as the soil and stones, with the same absolute right of use and appropriation by the owner of the land.

4. Waters and Water Courses—Burden Upon Plaintiff to Show Springs Diverted by Defendant Flowed or Percolated into Stream. —In an action to enjoin a city from taking water from springs on the ground that it would materially affect the water supply in a river, the burden was upon the plaintiff to establish by satisfactory evidence that the water from the springs flowed or percolated directly or indirectly into the river.

5. Waters and Water Courses—Presumptions as to Subterranean Waters.—There is a presumption that subterranean waters are gathered by percolation into a stream or course unless the supply is known to come from some definite source, and once a subterranean stream is known to exist the presumption is that it has a fixed and definite course and channel through which it flows and which varies only with the erosion which the waters produce.

6. Waters and Water Courses—Evidence Held to Sustain Finding that Spring Water Diverted Did Not Affect River.—In an action to enjoin a city from using water from springs on the ground that

waters of the spring fed a river and riparian rights of plaintiff landowner were injured, evidence held to warrant a finding by the court that the springs did not in fact feed the river.

7. Appeal and Error—Brief Stricken Where Classification of Question Involved Not Attached to Front.—Briefs should be stricken where the parties have not complied with Court of Appeals rule No. 3 (154 S. W. vii) by attaching to the front thereof a classification of the questions involved with authorities upon which reliance is had subjoined.

COLEMAN TAYLOR and W. V. PERRY for appellants.

E. J. FELTS, O. M. SMITH and S. R. CREWDSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

In the hills of Logan county are located two big, exuberant springs of crystal water suitable for domestic purposes. They are the subject of this litigation. The appellant, Nourse, was plaintiff below. He is a landowner on Muddy river and commenced this action on behalf of himself and other landowners on that stream similarly situated, praying an injunction against the city of Russellville, its mayor and council and J. A. Howard and C. H. Joslin, staying and restraining them and each of them from taking the water, or any substantial quantity of it from the two springs and carrying it by pipes into the city of Russellville to be distributed through its water mains and system to the citizens of that town for domestic use and for use by the city in protecting its property and that of its citizens from fire. Neither of the springs is located on the lands of appellant or any one for whom he sues. Appellant avers in his petition that the spring on appellee Howard's lands, which is some miles from the city of Russellville, is the source and main supply of Muddy river and that the spring on appellee Joslin's land, a mile or more away from the Howard spring, is also a feeder of Muddy river, and that in dry seasons the two springs supply water to the river but for which the river would be dry, and that he and other riparian owners of Muddy river have vested rights which the city of Russellville and its citizens have no legal right to disregard by appropriating all the water from the two springs to the use of inhabitants of Russellville. Among other things the petition states:

"Plaintiff further avers that said river has quite a large volume of water, and while same is not navigable, the same flows all year in large volume, and likewise same is fed by said springs the year round, and affords a valuable and sufficient supply of water for the domestic purpose of plaintiff and of the several riparian owners, and from which this plaintiff and the said riparian owners, both above and below him, obtain their supply of water for their stock, cattle and general farm use, and that by reason of the continued flow of said stream, or Muddy river, and the foregoing, the same is of great value to this plaintiff and all other riparian owners, both above and below the lands of this plaintiff."

It is also set forth in the petition that the mayor and common council of Russellville have made or are about to make a contract for the purchase and appropriation of the springs and the water therefrom to the sole and separate use of the appellee city and its inhabitants, and that such an appropriation of the water will materially affect the water supply in Muddy river to the permanent injury and damage of landowners along that stream.

By answer the city and its co-defendants denied the material averments of the petition and especially that the two springs constituted the head, source and main supply of water in Muddy river, or any supply of water in that stream, and denied that the water from the two springs or any part thereof emptied into Muddy river, and further denied that the taking and appropriation of water from the springs would in any measure affect or lessen the flow of water in that stream.

Issue being joined the parties undertook to sustain their contentions by evidence. For appellant, plaintiff below, it was testified by Nourse and one or two more citizens that the two springs were ever-flowing and that the volume of water therefrom was large; that in dry seasons of the year the springs did not appreciably decrease in volume; that Muddy river frequently in the fall of the year became low and sometimes had very little water in it; that while they did not know and could not state for a certainty that the water from the two springs, or any of it, flowed into Muddy river, it was their belief and opinion it did so flow, but at what point the water from the springs entered the river they were unable to state.

For the city and its co-defendants it was shown that between Muddy river and the springs is a low ridge or watershed, running for some miles, and that there is no surface or other indication that the water from the springs passed under the ridge into Muddy river or into the river at all; that the springs are not near the river and are about a mile apart, and that the upper spring produces about 300 gallons of pure crystal water every minute, while the lower spring produces 250 gallons every minute; that the upper or Howard spring comes out of a mountain or cliff, flows only a short distance, passes over a slight precipice, runs on and soon disappears in the earth, and no man knows its source, course, or confluence; that the Joshlin spring comes from a cave or cliff, runs in a channel a short distance and disappears in the ground, giving no sign or trace of its course or mouth; that the water has been tested and is pure; that the supply is sufficient for the needs of a city much larger than Russellville and that the city purposes to install its reservoirs and pumps at the spring and have a spillway and take only such water from the springs as may be necessary to supply the needs of the city; that the present supply of water for the city of Russellville is from deep wells and is inadequate. Moreover, the water is polluted, as shown by many tests; that there is no other known source of supply of pure water available to the city save the two springs within a reasonable radius. Two civil engineers who were witnesses testified they had examined the region of the location of the springs and Muddy river and gave it as their opinion that the water from the two springs did not flow either directly or indirectly into Muddy river in the neighborhood of appellant's farm or above that point, and that the supply of water in Muddy river would not be lessened by the city's acquisition and use of the two springs. This opinion is supported by the fact that although the two springs flowed volumes of water during last fall in its driest period, the river had only stagnant pools and no stream.

Upon these facts the chancellor found that the water from the springs did not flow into Muddy river; that the supply of water in Muddy river would not be materially affected by the acquisition of the water from the springs by the city of Russellville, and denied appellant the injunction which he prayed. From that judgment Nourse appeals.

Subterranean streams, as distinguished from subterranean percolations, are governed by the same rules, and give rise to the same rights and obligations, as flowing surface streams. 64 Am. Dec. 721. The owner of the land under which a stream flows can, therefore, maintain an action for the diversion of it, if such diversion took place under the same circumstances as would have enabled him to recover if the stream had been wholly above ground. Wheatley v. Baugh. 25 Penn. 528; 64 Am. Dec. 721. But in order to bring subterranean streams within the rules governing surface streams their existence and their course must be, to some extent, known or notorious. Roath v. Driscoll, 20 Conn. 533. It must be proved that there was a well defined and discerned stream, and not merely a percolation. Williams v. Ladew, 161 Pa. 283; 41 Am. St. Rep. 891. The only classification of subterranean waters made by the common law is based on the method of transmission through the ground, and is that they belong to one of only two classes, namely: 1, Underground currents of water flowing in known and defined channels or water courses; 2, water passing through the ground beneath the surface in channels which are undefined and unknown. The rights to the waters of the first class are governed by the rule of law controlling surface streams; while the waters of the second class are treated as mere percolations, and, therefore, as belonging to the owner of the soil wherein they are found. 7 H. L. Cas. 349.

Percolating waters are parts of the earth itself, as much as the soil and stones, with the same absolute right of use and appropriation by the owner of the land. Wheelock v. Jacob, 70 Vt. 162; 67 Am. St. Rep. 659; Metcalf v. Nelson, 8 S. Dak., 87; 59 Am. St. Rep. 746.

The law seems to be well settled that water percolating through the soil is not, and cannot be, distinguished from the soil itself. The owner of the soil is entitled to the waters percolating through it, and such water is not subject to appropriation. The ordinary rules of law applying to the appropriation of surface streams do not apply to percolating water and subterranean streams with undefined and unknown courses and banks. Kinney on Irrigation, section 48; Washburn on Easements and Servitudes, p. 505; 84 Am. Dec. 511.

As appellant Nourse asserts that the water from the two springs formed the source and chief supply of water

in Muddy river, by which stream his farm is watered and the water from the springs disappear under the ground a mile or more from the said stream, the burden was upon him to establish by satisfactory evidence that the water from the two springs flowed or percolated either directly or indirectly into Muddy river.    Barclay v. Abraham, 100 A. S. R. 365, 121 Iowa 619.    This burden he failed to sustain.    The presumption is that subterranean waters are gathered by percolation into a stream or course unless the supply is known to come from some definite source.    Once a subterranean stream is known to exist the presumption is that it has a fixed and definite course and channel through which it flows and which varies only with the erosion which the water produces. These presumptions are based upon and arise from known facts.    Accepting this as true, the streams flowing from the springs would, if emptied into Muddy river at any point near the lands of appellant Nourse, have had a perceptible influence upon the volume of water in that stream and would have prevented that stream becoming stagnant and dry in fall seasons.

The evidence greatly preponderates in favor of the appellee city and the trial court did not err in finding the facts against appellant Nourse.    Having so found the facts the conclusion reached was logical and inevitable. The court properly denied the injunction.

Neither party in the preparation of briefs has complied with rule 3 of the court by attaching to the front of the briefs a classification of the questions involved, with authorities upon which reliance is had subjoined, and for this reason the briefs should both be stricken.

Judgment affirmed.